IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DANIELLE IONATA,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | **No. 15-6561** |
| v. | : | |
| | : | |
| **ALLSTATE INSURANCE COMPANY,** | : | |
| **Defendant.** | : | |

**MCHUGH, J.**                                                                                                                                   **AUGUST 30, 2016**

**MEMORANDUM**

      This case involves an insurance coverage dispute that underscores the problems presented by the artificial and often arcane structure and language of insurance policies. The dispute involves a Homeowner's Policy and the definition of one's residence. The Defendant carrier, Allstate, has moved for summary judgment, arguing with some persuasiveness that an insured can only be said to "reside" in a property if they physically occupy it. But the clarity and simplicity of that analysis is called into doubt by other provisions of the policy suggesting that coverage would exist even if the property were vacant, or rented out for use as a personal residence. Given these inconsistencies, I find the policy ambiguous as a matter of law, with the result that a jury must determine the reasonable expectations of the insured.

    **I. Summary of Relevant Facts**

      Until 2011, Plaintiff, Danielle Ionata, lived at 207 Springfield Road, Clifton Heights, Pennsylvania 19018 ("the Property"). Ionata owned the home jointly with her then-husband, Charles Donnelly. She insured the Property through Defendant Allstate Insurance Company

("Allstate") with a standard Homeowner's Policy ("the Policy").[1] On October 13, 2014, a fire destroyed the Property.

In 2011, it is undisputed that Ionata stopped living at the Property full-time, but the parties disagree about how to characterize her action. Defendant Allstate contends that Ionata "moved out." Defendant's Statement of Uncontested Facts at ¶ 4. Plaintiff maintains that she "temporarily relocated," but the Property continued to serve as her "primary residence." Plaintiff's Affidavit dated April 11, 2016 at ¶¶ 1–2. Specifically, Plaintiff avers, "In approximately 2011, I separated from my husband, Charles Donnelly, Sr. and temporarily relocated from [the Property] during the pendency of my divorce." *Id.* at ¶ 2. Moreover, despite temporarily relocating, Plaintiff continued to use the Property as her permanent mailing address and spent time at the Property two to three times per week. *Id.* at ¶ 3. She also "continued to have numerous personal items including clothing, children's clothes, furniture and home furnishings" at the Property. *Id.* at ¶ 4. At the time of the fire, a close family friend, whom she referred to as "uncle" despite the lack of any blood relationship, was living at the Property with her permission.

Regardless of how Ionata's 2011 move is characterized, it is undisputed that she continued to maintain the Policy, renewing it each term and making timely premium payments. In turn, the parties agree that the Policy was in full effect in October 2014.

At the time of the fire loss, Ionata hired a public adjuster to represent her. Plaintiff, through her public adjuster, submitted the claim to Defendant Allstate. Allstate initially denied the claim on the grounds that Ionata failed to cooperate with its investigation, leading her to sue for breach of contract in state court.

---

[1] The Policy included coverage for Plaintiff's mortgage lender. There is a related civil action brought by the assignee of the mortgage, *Selene Finance v. Allstate Insurance Company*, No. 16-2147, seeking to protect its interest in the insured premises.

Allstate removed the action to this District, and now contends that Ionata's claim must be rejected for her failure to "reside" at the Property at the time of the loss.  There is no contention that Plaintiff's absence from the home contributed to the risk of a fire.  Rather, Allstate argues that pursuant to the terms of the Policy and corresponding Pennsylvania case law, the Property was no longer a covered "dwelling."  The Policy at 4, ¶ 12.

**II. Discussion**

Allstate has moved for summary judgment.  My decision is therefore governed by the well-established test set forth in Federal Rule of Civil Procedure 56(a), as amplified by *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"The interpretation of an insurance contract is a question of law."  *Clarke v. MMG Ins. Co.*, 100 A.3d 271, 275 (Pa. Super. Ct. 2014).  Courts must enforce the plain meaning of contractual language that is "clear and unambiguous."  *Id.* at 275–76 (citation omitted).  On the other hand, if ambiguities exist, the contract must be construed against the carrier as the drafter.  *Prudential Prop. and Cas. Ins. Co. v. Sartno*, 588 Pa. 205, 212, 903 A.2d 1170, 1174 (2006).

The Policy here specifies as follows: "Property We Cover Under Coverage A: 1. Your dwelling including attached structures."  The Policy at 5, Section I, "Your Property."  In an earlier section titled, "Definitions Used In This Policy," the Policy defines "Dwelling" as follows:

> "Dwelling" — means a one, two, three, or four family building, identified as the insured property on the Policy Declarations, where you reside and which is principally used as a private residence.

The Policy at 4, ¶ 12.  Allstate argues that because Plaintiff was not living at the Property at the time of the fire, the Property cannot qualify as a "Dwelling" under the terms of the Policy, and the loss is therefore outside the scope of coverage.

3

Where a policy defines a term, a court is required to apply that definition in its construction of the policy. *401 Fourth St., Inc. v. Inv'rs Ins. Grp.*, 583 Pa. 445, 455, 879 A.2d 166, 171 (2005). Here, although the Policy explicitly defines "dwelling," it does so by reference to a separate term which it does not define – "reside." The terms "residence" and "reside" have their own checkered jurisprudence. As the Court of Appeals noted in a different but related context of statutory construction:

> The words "resident" and "residence" have no precise legal meaning although they are favorite words of legislators. Sometimes they mean domicile plus physical presence; sometimes they mean domicile; sometimes they mean something less than domicile.

*Willenbrock v. Rogers*, 255 F.2d 236, 237 (3d Cir. 1958).

In some instances, policies explicitly define the term. For example, in *Erie Insurance Exchange v. Weryha*, the automobile policy defined the term "resident" as one who "physically lives" in the household of the policyholder. 931 A.2d 739, 741–42 (Pa. Super. Ct. 2007). In other instances, even where the term is not specifically defined, the courts have applied classic common-law definitions. *See, e.g., Wall Rose Mut. Ins. Co. v. Manross*, 939 A.2d 958, 965 (Pa. Super. Ct. 2007). Allstate cites *Wall Rose*, together with other cases, in support of the seemingly straightforward proposition that where one resides would ordinarily be considered the place where one lives and sleeps on a daily basis. But as the Superior Court recognized in *Miller v. Poole*, a later case distinguishing *Wall Rose*, residence can have more than one meaning, and a "contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." 45 A.3d 1143, 1146 (Pa. Super. Ct. 2012) (citing *Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 588 Pa. 470, 481, 905 A.2d 462, 468–69 (2006)). This rule of construction is consistent with the principle that an insurance policy must be read "as a whole, and not in discrete units." *Clarke*, 100 A.3d at 275. *See also Lucker Mfg. v. Home Ins.*

4

*Co.,* 23 F.3d 808, 814 (3d Cir. 1994) ("A provision is ambiguous if reasonable persons considering the relevant language in the context of the entire policy could honestly differ as to its meaning.").

Allstate's argument certainly has both the force of common sense and a certain superficial appeal.  But a review of the Policy in its entirety, and a closer focus on the language of various provisions, calls into question whether its terms can *only* be understood to require physical presence at the Property.

For example, Paragraph 9 in Section I, "Conditions," provides, in part:

9. Permission Granted To You

> a) The residence premises may be vacant or unoccupied for any length of time, except where a time limit is indicated in this policy for specific perils.  A building structure under construction is not considered vacant.

The Policy at 16, ¶ 9(a).  Logically, it is difficult to reconcile Allstate's position that the policyholder must be living on the premises with a clause that provides the Property may be vacant or unoccupied for any length of time.  At oral argument, defense counsel dismissed this provision as irrelevant because the Property was in fact not vacant at the time of the loss.  That misses the point.  The *sine qua non* of Allstate's position is that the policyholder personally must be on the premises for coverage to apply, and yet the Policy specifically provides coverage even if it is vacant.  Necessarily, if the Property were vacant, the insured would not be "residing" there in the sense advanced by Allstate as the foundation for its argument.[2]  On that score, it should be

---

[2] Such a situation might arise if the insured were deceased, but this section does not purport to address that specific situation.  It permits vacancy, and further clarifies what it describes as "permission" granted to the insured.

5

noted that Plaintiff did not abandon[3] or cut her ties with the Property; she left because of an impending divorce.

This ambiguity is amplified by a further provision in the Section titled "Definitions Used In This Policy." As is typical with homeowner's coverage, business use is excluded. In defining "Business," the Policy provides that the use of the Property will not be deemed commercial if "it is rented occasionally for residential purposes." The Policy at 3, ¶ 6(b)(1). This particular language cannot be said to encompass the situation where the policyholder might rent but continue living on the Property, because that same section addresses renting a "portion" of the Property in a separate subparagraph, which states that renting "to not more than two roomers or boarders" will not be deemed a business use. The Policy at 3, ¶ 6(b)(2). As was true of the vacancy provision, this definition, which explicitly endorses the policyholder's right to relinquish the premises to third parties, is flatly inconsistent with Allstate's premise that the insured's physical presence is a prerequisite for coverage. Furthermore, the specific focus of the rental permission—"for residential purposes"—would lead one to conclude that the fulcrum for coverage is the *nature* of the Property's use. Notably here, the Property did continue to be occupied and used for residential purposes by Plaintiff's "uncle."

Because the Policy is couched in terms of where the insured resides, it is relevant to observe that one can have more than one residence under Pennsylvania law. *See Wall Rose*, 39 A.2d at 968; *McCarthy v. Philad. Civil Serv. Comm.,* 339 A.2d 634, 636 (Pa. Commw. Ct. 1975), *aff'd*, 424 U.S. 645 (1976) (drawing a distinction between "residence" and "domicile" under Pennsylvania law).

---

[3] In that regard, the Policy draws a distinction with respect to "abandoned" property, for which the carrier explicitly denies responsibility, in a provision that is situated adjacent to the provision addressing vacancy. The Policy at 16, ¶ 8.

Allstate cites three decisions from this court that have accepted its definition of "reside" and denied coverage, but I find them distinguishable in that no ambiguity in the policies at issue in those cases was identified or addressed as part of the court's analysis.  *See Mabrat v. Allstate Ins. Co.*, No. 12-1293, 2012 WL 6209884 (E.D. Pa. Dec. 12, 2012); *Mu'Min v. Allstate Prop. & Cas. Ins. Co.*, No. 10-7006, 2011 WL 3664301 (E.D. Pa. Aug. 17, 2011); *Bell v. Allstate Ins. Co.*, No. 03-4482, 2005 WL 1353527 (E.D. Pa. May 31, 2005).

Under Pennsylvania law, "the proper focus for determining issues of insurance coverage is the reasonable expectations of the insured." *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 418 F.3d 330, 344 (3d Cir. 2005) (quoting *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 903 (3d Cir. 1997)).  Ordinarily, the parties' reasonable expectations are best reflected by the language of the insurance policy, *Safe Auto Ins. Co. v. Berlin*, 991 A.2d 327, 332 (Pa. Super. Ct. 2010), but the language is controlling only if it is "plain and unambiguous."  *West v. Lincoln Benefit Life Co.*, 509 F.3d 160, 168–69 (3d Cir. 2007).  Here, where the Policy does not attempt to define what it means to "reside" at the Property, and the definition that Allstate advances in support of its Motion cannot be reconciled with the explicit permission the Policy confers to leave it vacant or rent it to third parties, I cannot hold as a matter of law that the language is unambiguous.  Although courts should hesitate to invoke the expectations of the parties to re-write the clear terms of a contract, the doctrine exists "to protect non-commercial insureds from policy terms not readily apparent."  *Treesdale*, 418 F.3d at 344.

It is important to recognize that many of the insurance cases involving the definition of "resident" or "reside" involve claims by non-policyholders seeking to hitchhike their way to coverage by asserting a relationship with the policyholder—such as first party benefits under an auto policy or third party indemnity protection under a homeowner's policy.  *See*, *e.g.*,

7

*Wall Rose*, 939 A.2d at 965 (finding homeowner's grandson was not a "resident" of the household and thus not an "insured" under the policy). *See also Amica Mut. Ins. Co. v. Donegal Mut. Ins. Co.*, 545 A.2d 343, 344–45 (Pa. Super. Ct. 1988) (considering whether the daughter of divorced parents was entitled to coverage for an automobile accident under her father's automobile policy, which limited coverage to residents of his household); *Allstate Ins. Co. v. Naskidashvili*, No. 07-4282, 2009 WL 399793, at *4 (E.D. Pa. Feb. 16, 2009) (finding a genuine issue of material fact precluded summary judgment as to whether a visiting relative of a homeowner was a "resident" for purposes of the homeowner's insurance policy); *Quincy Mut. Fire Ins. Co. v. Clyman*, 910 F. Supp. 230, 233 (E.D. Pa. 1996) (denying summary judgment because a reasonable jury could find that homeowners' son who attended an out-of-state college and maintained a separate apartment was not a resident relative under parent's homeowners' policy).

Here, Ionata is the policyholder and in direct privity with Allstate—not a third party seeking coverage fortuitously. She purchased the Policy along with her ex-husband and consistently paid the premiums to protect the house that she owned, one she was obligated to insure under the terms of her mortgage. The continued residential use of the Property is not in dispute. Nor is her continued personal use of the Property, including its use as her legal address. In my view, that direct relationship with both the carrier and the Property for which she seeks coverage gives far greater force to the applicability of the reasonable expectations doctrine than many other coverage cases where it is invoked.

Accordingly, because of the inconsistent terms of the Policy, I find that a jury must resolve the reasonable expectations of the Plaintiff.[4]

---

[4] This denial is without prejudice to Allstate's right to raise any other defenses it may be entitled to assert.

8

**III.** **Conclusion**

Based on the foregoing, Allstate's Motion will be denied. An appropriate order follows.


    /s/ Gerald Austin McHugh
United States District Judge